**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JILL ROY B.,[1] | Case No. 2:19-cv-06476-AFM |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |
| ANDREW M. SAUL, | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On January 22, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income. (AR 275-85.) In both applications, Plaintiff alleged

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

disability beginning June 17, 2009. *Id.* The Social Security Administration denied the claim initially. (AR 160-65.) Administrative Law Judge ("ALJ") Dunn held hearings on July 25, 2017 and May 15, 2018. (AR 34-76.)

On June 27, 2018, the ALJ issued a decision, which found Plaintiff not disabled. (AR 15-28.) The ALJ found that Plaintiff "has the following severe impairments: osteoarthritis of the right hand, back, and knees; degenerative disc disease of the lumbar spine; diabetes mellitus; hypertension; hyperlipidemia; anemia; obesity; depression; and anxiety." (AR 21.) The ALJ also determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: "no climbing ladders, ropes, or scaffolds; no more than occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, or exposure to hazards; no more than frequently handling and fingering with the right upper extremity; is limited to unskilled work of no more than reasoning level 1 or 2; and no more than occasional public contact." (AR 22.) Supported by the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff was unable to perform past relevant work but could perform other jobs existing in significant numbers in the national economy. (AR 27.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-6), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUE

Whether the ALJ properly discounted Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla, but less than a preponderance." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Furthermore, substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where this evidence "can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner." *Id.* In making this determination, the Court must consider the record as a whole – weighing evidence that supports as well as evidence that detracts from the ALJ's determination. *Id.*

## DISCUSSION

### A.  Plaintiff's Subjective Symptom Complaints

Plaintiff testified at two administrative hearings – July 25, 2017 and May 15, 2018. (AR 34-76.) Plaintiff claims to have three "main" problems: pain in her right wrist/hand, unsteadiness on her feet, and mental health issues. (AR 41, 49.) Plaintiff complained of pain in her right (dominant) hand and wrist. (AR 66.) Plaintiff explained that this pain is from long-term arthritis in the hand (AR 64) as well as a recent onset of carpal tunnel in the wrist. (AR 49.) Plaintiff also alleged that she could not lift anything with her right hand. (AR 49.) Providing two examples of this, Plaintiff described that she could not hold a glass since it "would slip out of my hand" and that she could not write using the hand. *Id.* Nonetheless, Plaintiff indicated that doctors prescribed only pain pills for the issue and had not discussed any surgeries/procedures. (AR 66.)

In regard to her mental health, Plaintiff noted that she has a history of alcoholism and cocaine abuse, has difficulty concentrating, has panic disorder, and has been diagnosed with depression and anxiety. (AR 68.) As treatment, Plaintiff stated that she takes Sertraline, Trazadone, and Seroquel. (AR 71.) She stated that she hears voices, which tell her to "kill." (AR 69.) According to Plaintiff, these voices make it difficult for her to get along with people. *Id.* She also stated that due to this paranoia, "[t]he only time I go out is to see my doctors." *Id.*

Plaintiff testified that she is "dizzy," "unsteady" on her feet, walks "slow," sometimes trips, cannot drive, and is unable to go out alone. (AR 49-52, 68.) When

explaining her dizziness, Plaintiff stated that she experiences particularly bad days "[a] couple of days" per week and that those days are "miserable." (AR 50.) Moreover, Plaintiff noted that she has arthritis in her knees and lower back and hence can only carry about five pounds. (AR 68.) She also stated that pain in her feet causes problems walking. *Id.* Due to these issues, Plaintiff specified that she cannot walk more than "like half a block" and also cannot "sit for too long, maybe ten minutes." *Id.* Plaintiff conceded that she has never used a cane or similar ambulation device. (AR 52.)

## B.  Relevant Law

Where a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms, and the ALJ has not made an affirmative finding of malingering, an ALJ must provide specific, clear, and convincing reasons before rejecting a claimant's testimony about the severity of her symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991)) (en banc).

Factors an ALJ may consider include conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment – as well as ordinary techniques of credibility evaluation, such as internal contradictions in the claimant's statements and testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In addition,

4

1   although an ALJ may not disregard a claimant's testimony solely because it is not

2   substantiated by objective medical evidence, the lack of medical evidence is a factor

3   that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400

4   F.3d 676, 680-681 (9th Cir. 2005).

5       **C.  Analysis**

6       The ALJ found Plaintiff's subjective complaints less than fully credible. (AR

7   23-26.) As discussed below, the ALJ's decision provided several reasons in support

8   of this determination.

9       1.  Lack of Objective Medical Evidence

10       As long as it is not the sole reason, an ALJ may rely upon a lack of objective

11   medical evidence to discount a claimant's allegations of pain and/or disabling

12   symptoms. *See, e.g.*, *Burch*, 400 F.3d at 681 ("Although lack of medical evidence

13   cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can

14   consider in his [or her] credibility analysis."). Here, although Plaintiff's impairments

15   resulted in some functional limitations, the ALJ found that the medical evidence did

16   not support the severity of Plaintiff's allegations. (AR 23.)

17       The ALJ concluded that the objective medical record did not support the

18   degree of limitation that Plaintiff alleges to experience when walking. (AR 24.) The

19   ALJ began by noting an April 2015 x-ray, which "showed mild overall scattered

20   degenerative changes [in Plaintiff's lumbar spine] which are slightly more prominent

21   at L4-L5." (AR 23, 713) (citations omitted). Two months after this x-ray, Plaintiff

22   saw Azizollah Karamlou, M.D., for a consultative internal medicine examination.

23   (AR 23-24, 624-31.) This examination showed that Plaintiff had "local tenderness of

24   the lumbar spine and decreased range of motion, but no spasm." (AR 23-24, 624-30.)

25   Plaintiff had tenderness in her knees but had a normal range of motion, did not have

26   acute inflammation, and otherwise had a "normal physical examination with normal

27   motor strength, sensory, coordination, and reflex tests." (AR 24, 628-29.) Plaintiff

28   also did not require any devices for ambulation. (AR 24, 628.) After the examination,

a consultative physician opined that Plaintiff should not climb ladders or work at unprotected heights but was otherwise able to perform "light work." (AR 25; *see also* AR 630 ("[S]he should be limited to standing and/or walking for six hours in an eight-hour workday with normal breaks in between . . . She is able to perform bending, kneeling, and balancing without limitations.").)

The ALJ also summarized Plaintiff's October 2017 consultative internal medicine examination with Aaron Tran, M.D. (AR 24.) During this examination, Plaintiff "exhibited lumbar spine tenderness, limited range of motion, allegedly could not walk on heels and toes, and had a positive straight leg raise test." (AR 24, 912.) Plaintiff also had bilateral knee crepitus (but normal range of motion) and diminished sensations from the fingers to the mid-forearm and from the feet to the shins, suggestive of peripheral neuropathy. (AR 23, 913.) However, Plaintiff again "had full muscle strength, a normal gait, and full reflexes." (AR 24, 909-21.) Furthermore, Dr. Tran opined that Plaintiff "could perform light work but was limited to occasional postural maneuvers." (AR 25, 909-21.)

Ultimately, the ALJ concluded that the medical records demonstrate that Plaintiff has "a normal gait and does not require an assistive device for ambulation." (AR 23, 628, 630, 636, 911-913.) The ALJ found that the Plaintiff's medical records "do not support the degree of limitation the claimant alleges; nor do they suggest the presence of any impairment that is more limiting than found in this decision." (AR 24.)

With regard to Plaintiff's complaints of wrist/hand pain, the ALJ noted that in August 2015 (shortly after Plaintiff filed for disability), the Plaintiff's musculoskeletal, cardiovascular and neurological examinations were all "normal." (AR 24, 654.) In fact, "[i]t was not until September 2016 that a right hand x-ray showed focal degenerative change of the interphalangeal joint of the thumb." (AR 24, 869.) In 2017, a right wrist x-ray only found "possible minimal changes due to prior trauma." (AR 24, 996.)

When Plaintiff presented to an emergency room in 2017 reporting a tender right wrist, she was found to not have focal neurological deficit. (AR 24, 1012.) And while Plaintiff did begin wearing a wrist brace and was diagnosed with carpal tunnel syndrome by one doctor, the ALJ noted that "there have been no EMG or NCV tests to confirm carpal tunnel syndrome as a medically determinable impairment." (AR 24, 66, 1010-51.) Taking into consideration that Plaintiff's January 2018 right wrist MRI showed evidence of sprain of the scapholunate ligament and osteoarthritis, the ALJ found some exertional limitations. (AR 24, 1002.) Nonetheless, the ALJ determined that the medical record "would not support any greater limitations that [sic] the light exertional level of work." (AR 24.)

As to Plaintiff's mental impairments, the ALJ found that Plaintiff had a history of alcoholism and cocaine abuse ending in 2014. (AR 24, 647-94.) The ALJ also reported that Plaintiff complained of having anxiety, depression, and audio hallucinations of denigrating voices of her use. (AR 24.) An initial assessment in August 2014 indicated that Plaintiff "had panic disorder without agoraphobia, depression, not otherwise specified, aunt-nephew problem" and scored "a GAF score of 65, which suggests no greater than mild symptoms." (AR 24, 663.) After that initial assessment, progress notes from Plaintiff's treating psychiatrist were "mostly normal" and suggested "that her mental health treatment has been successful" (AR 24).

The ALJ also summarized an October 2017 consultative psychiatric examination, which Plaintiff had with Gul Ebrahim, M.D. (AR 25, 922-26.) Plaintiff "presented with average speech, anxious mood and affect, normal thought process and content, and had normal concentration, persistence, and pace." (AR 25, 922-26.) Dr. Ebrahim gave Plaintiff a GAF score of 60, "which suggests mild to moderate limitations." In Dr. Ebrahim's opinion, Plaintiff "had no more than mild mental limitations." (AR 26, 925, 927–28.) Taking into account the evidence showing Plaintiff suffered from mild mental impairment, the ALJ limited Plaintiff to

7

"unskilled work of no more than reasoning level 1 or 2; and no more than occasional public contact." (AR 22.)

The ALJ's summary of the medical evidence is supported by substantial evidence, and it was reasonable for the ALJ to conclude that Plaintiff's allegations of disabling pain and limitations were not fully supported by the objective evidence. Accordingly, the ALJ properly relied upon the lack of objective medical evidence as one of the grounds for her discounting Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

2.   Effectiveness of Treatment and Medication

After reviewing the medical record, the ALJ found that Plaintiff had shown consistent improvement in her mental health as a result of her treatment and medication. (AR 23-26.) In assessing Plaintiff's subjective symptoms, effectiveness of treatment and medication is a relevant factor. 20 C.F.R. § 404.1529(c)(3); *see generally Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). An ALJ may rely upon evidence that medications are controlling or improving Plaintiff's symptoms in order to discredit Plaintiff's testimony regarding the disabling effects of her impairments. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly rejected claimant's subjective complaints where medical records showed that she responded favorably to physical therapy and medication); *Youngblood v. Berryhill*, 734 F. App'x 496, 499 (9th Cir. 2018) (evidence of effective treatment provides a valid basis to discount claimant's subjective symptom testimony).

Here, based on medical records from 2014 to 2017, the ALJ found consistent improvement in Plaintiff's mental health from treatment and medication – as opposed to isolated improvement in a pattern of waxing and waning symptoms. (AR 24-26.)

*Cf. Garrison*, 759 F.3d at 1017 (ALJ may not reject a claimant's testimony regarding mental health issues if symptoms merely "wax and wane" during the course of treatment). The ALJ noted that Plaintiff "complained to treating professionals of having anxiety, depression, and audio hallucinations of denigrating voices of her use." (AR 24.) Yet, as early as October 2014, Plaintiff denied having hallucinations and specifically reported that "medication decreased her audio hallucinations to occasional." (AR 24, 636.) Further, the ALJ summarized progress notes from May 2014, August 2015, May 2016, July 2016, November 2016, and March 2017, which found that Plaintiff continued to deny having any delusions, had good engagement and eye contact, had normal speech and tone, and showed good judgment, good memory, and good concentration. (AR 24-25, 590-623, 632-646, 882-899.) Similarly, in a July 2017 progress note, Plaintiff continued to deny depressive symptoms, audio hallucinations, and had a good mood. (AR 25, 882.) The ALJ also noted that during this exam, Plaintiff complained of experiencing sudden panic episodes lasting only several seconds. *Id.* The ALJ concluded that these progress reports showed that Plaintiff's "mental health treatment has been successful." (AR 24.)[2]

Based on the foregoing, the ALJ's finding that Plaintiff's "mental health treatment has been successful" is supported by substantial evidence, and this was a valid basis for discounting Plaintiff's subjective complaints.

---

[2] The ALJ also discussed a medical source statement by Plaintiff's treating psychiatrist, Dr. Steven Brown. (AR 25-26.) This statement indicated that Plaintiff had marked limitation in social functioning, concentration, persistence, and pace. (AR 25, 905-06.) The ALJ highlighted two contradictions in Dr. Brown's opinion. (AR 25.) First, while Dr. Brown opined that Plaintiff had a few marked limitations, he also consistently described "mostly normal mental examinations." (AR 25; *see* AR 590-623, 632-646, 882-899.) Second, the ALJ pointed out that some of Plaintiff's daily activities conflicted with Dr. Brown's testimony. (AR 25.) After identifying these contradictions, the ALJ explained that Dr. Brown's findings should be given "little weight." (AR 25.) Plaintiff does not contest this aspect of the ALJ's decision.

3.  <u>Social Activities</u>

The ALJ found that evidence of Plaintiff's daily activities indicates her limitations (including specifically those in the social area) were not as severe as she claimed. (AR 25.) If specific and supported by substantial evidence, that is a clear and convincing basis for discounting Plaintiff's subjective symptom claims. *See Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff alleged that she has numerous social limitations: inability to go out alone; inability to shop, cook, and drive; and inability get out of bed several days per week. (AR 23, 50-51, 71, 72.)  However, the ALJ cited evidence that Plaintiff was able to do other social activities that are inconsistent with these alleged limitations. For example, Plaintiff regularly attends Church, and she missed a doctor's appointment to attend an out of town wedding. (AR 23, 882, 924.) In reply, Plaintiff contends that the ALJ's examples of social activities "are far short of what is needed to demonstrate the capacity to perform work activity." (ECF No. 22 at 10.) But the ALJ referred to those activities as being inconsistent with Plaintiff's claims, not because the activities demonstrate the capacity to perform work. (AR 25.) Plaintiff further contends that Plaintiff "made up" for the missed doctor's appointment by seeing a different doctor after the wedding. (ECF No. 22 at 9.) Again, that is immaterial to the ALJ's conclusion. The importance of this evidence is that attending Church and venturing to an out of town wedding are inconsistent with the severe limitations Plaintiff testified to "in the social area." (AR 25.) Thus, substantial evidence supports the ALJ's finding regarding inconsistencies in Plaintiff's social activities, and the ALJ properly relied upon this as a basis for discounting Plaintiff's subjective symptom claims. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict

1   claims of a totally debilitating impairment.").[3]

2         Finally, even if the Court were to conclude that the ALJ erred in relying on

3   inconsistencies reflected in Plaintiff's social activities, such error would be harmless

4   in light of the other legally sufficient reason provided by the ALJ. *See Molina*, 674

5   F.3d at 1115 (where one or more reasons supporting the ALJ's credibility analysis

6   are invalid, error is harmless if the ALJ provided other valid reasons supported by

7   the record); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-1163

8   (9th Cir. 2008) (despite the invalidity of one or more of the ALJ's stated reasons for

9   discounting a claimant's credibility, the court properly may uphold the ALJ's

10   decision where the ALJ stated valid reasons).

11   **ORDER**

12         IT IS THEREFORE ORDERED that Judgment shall be entered affirming the

13   decision of the Commissioner and dismissing this action with prejudice.

14

15   DATED:  6/12/2020

16

17   _____

18        ALEXANDER F. MacKINNON
         UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25   ---

26   [3] The ALJ also noted that Plaintiff rides her bike every day for thirty minutes and takes care of four cats. (AR 25, 602.) The ALJ concluded that these activities "are not limited to the extent one would

27   expect, given the complaints of disabling symptoms." (AR 25.) That conclusion, however, did not sufficiently explain which part of Plaintiff's testimony was inconsistent with those daily activities.

28   *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").